Sewall, C. J.
The title of the demandant, which is the extent of an execution, upon a judgment recovered by him against William Cr;ed, has been stated and examined in the case decided at this term, between the same demandant and Joseph Burnell. The difference in favor of this case is, that the premises demanded in this action are lots which had been drawn and assigned to the right of Joseph Hale, an original proprietor of Bridgeton; and this right had been conveyed to Creed, and described as including these lots. The demandant, therefore, showing the extent and return of his execution, maintains his title, at least against Creed, and all persons claiming under him. Upon this evidence, too, he shows a constructive, if not an actual, seisin of the premises demanded.
The extent of Botfs execution bears date on the 27th of December, 1783. The deeds and evidence of title offered *for the tenant at the trial are subsequent, and [ * 173 ] must avail him, if at all, as a title acquired against Bott.
For as to the title attempted to be derived from Hale, by a deed of release from Joseph Hale to the tenant, dated after the action was commenced, the tenant would not have been defended by that evidence if it had been admitted.
In 1771, the committee of the proprietors of Bridgeton for the time being conveyed to Samuel Johnson all the right of Joseph Hale, as the right of a delinquent proprietor, including and mentioning the demanded premises as lots drawn or assigned to that right; and, in 1773, the same right was conveyed by Johnson to Bridges, and, on the 4th of May, 1778, by Bridges to Porter, and by him, on the 7th of June, 1780, to W. Creed.
Without examining the validity of the conveyance by the committee, or the evidence of their proceedings, we incline to the opinion that the demandant proves a constructive seisin in Johnson and in those claiming under him, from the date of the deed to Johnson, although the same was not registered until April, 1794. The result of which would be, that the will of Joseph Hale, the original proprietor, proved in November, 1778, containing a resid uary devise to his son Joseph, which might be construed to in *164 elude his right in Bridgeton, had no operation as a conveyance to the son.
It may be objected that the deed from the committee to John-¡on, and the other deeds by which the title is derived to Creed, were not registered until 1794, after the date of the will and the death of the testator; and there was no evidence of an actual entry under those deeds.
But we think it very clear, as the son proves no seisin under the devise to him, that still the extent of Bott’s execution in 1783, and the subsequent registry of the title deeds, by which the tide from Johnson is derived to Creed, must prevent the operation of the will of Joseph Hale, the son. This was proved in 1795, and contains a resi.duary devise to his son Joseph Hale; and it was [ * 174 ] from this last devisee * that Perley, the tenant, obtained his release. The proceedings of the committee, and their deed to Johnson, and the subsequent deeds under which the title is derived to Creed, and the extent upon the execution against him, prove a seisin in the demandant, sufficient against Joseph Hale, the son, and all claiming under him, there being no evidence of an entry on his part, to avoid the consequences of these proceedings.
There is no suggestion of evidence of an entry on the part of Hale, the son, and we think the tenant is not entitled to a new trial, for the rejection of the evidence upon which he relied to show a title derived from Joseph Hale, the original proprietor.
I may observe, further, that the proceedings of the proprietors of Bridgeton, in making their allotments, and of their committee in selling the rights of delinquent proprietors, appear to have been confirmed by an act of the General Court in 1783. In this view of the defence, our attention has been called to the proceedings of the committee, from whom Enoch Perley received a deed in November, 1788, and to the effect of that deed, as conveying a title, which is to avail against the present demandant, if at all, as the delinquent proprietor of the lot in question.
With the rest of the evidence offered for the tenant at the trial, and rejected by the judge, was the deed, dated November 18, 1788, from Ingalls and others, a committee of the proprietors of Bridgeton to Enoch Perley, and the deed, dated August 31, 1791, from Enoch to Thomas Perley, the tenant. Under these deeds, if effectual to that purpose, the tenant derives to himself a title in the premises in controversy; and the premises have been sold away from the demandant.
By the first of these deeds, Ingalls and others, professing to act *165 in their capacity of a committee appointed by the proprietors of Bridgeton to make sale of the delinquent proprietors’ lands, pursuant to an act or law of'the General Court of the commonwealth, sell and convey to Enoch Ferley * three [*175] lots of land in Bridgeton, two of which are the lots of land described in the demandant’s writ; and these are sold sub ject to the proprietor’s or owner’s right of redemption.
There is no law of the commonwealth, and I believe 1 may say confidently, there never was any general or public law, either of the colony, the province, or the commonwealth, which authorized the sale of appropriated lots, such as had been severed and located by a committee of proprietors acting as a corporation ; such a sale being adopted as a mode of enforcing the collection of taxes assessed by the proprietors, by virtue of their authority to, manage their common and undivided lands. Proprietors of common and undivided lands had, indeed, by a provincial act, (3) authority to grant and order any suitable sum or sums of money, to be raised and levied upon their several rights, &c., according to their interests and shares; and when such assessments had not been paid, after certain periods of time had elapsed, and upon certain notices and advertisements directed by the act, the committee of the proprietors of such common lands were fully empowered, from time to time, at a public vendue, to sell and convey away so much of such delinquent proprietor’s right or share in said common lands as would be sufficient to pay, &c. This act is revised by a statute enacted under the commonwealth, (4) which contains similar provisions, and restricted altogether to the lands or estate, and to the proprietors’ shares thereof, holden in common.
The sale, however, to Johnson, in 1771, and that upon which the tenant relies, in 1788, are supposed to be justified by the provisions of a special law, enacted under the provincial government in 1768. The sale to Johnson purports to be a sale of a proprietor’s share or right in the township, including the lots drawn and to be drawn thereon ; and- fortified as it is with the depositions of the committee, placed by the act of the General Court upon the same footing, in point of evidence, as the original records of the proprietors, which had been destroyed by fire, it must be understood * that this sale was for proprietors’ charges, and to col- [*176] lect one or more assessments duly made upon the original share or right in the township conveyed by that deed, and in consequence of the delinquency of Hale, the original proprietor, t« answer such assessments.
*166 According to the evidence admitted, as introductory to the deed of Ingalls and others to Enoch Perley, taxes had been voted by the proprietors, and assessed by them, at a certain rate per lot, upon every lot which had been located and severed, and upon those lots only, arid not upon the lands remaining undivided and in common. The assessment was required to defray expenses incurred by the proprietors in the management of their common property. The owners of the lots might or might not be parties to these expenses, or to the assessment.
But it can never be admitted that the proprietors of Bridgeton had an authority to assess in this manner, and for these purposes, not the rights or shares of those who retained an interest in the proprietary, but an arbitrary power, to be exercised over all the lots and locations in the town, of which many, if not all, might be holden by titles wholly unconnected with the remaining proprietary rights. The power of selling, to enforce the payment of an assessment upon proprietors’ shares, may perhaps extend to such lots as, although severed, remain in the hands of the original proprietor; but here the tax itself seems to have been assessed without any authority. None was given, we think, by the private act cited, any more than by the public statute, relating to proprietors of common and undivided lands. The contemporaneous construction contended for by the tenant is against him in this view of the case. The sale to Johnson is an example of that construction. That was an assessment upon the proprietor’s right or share, and a sale of the whole right or share, as belonging to the proprietor, including his lots severed, as well as his interest in the common and undivided lands. If the lots severed had been previously sold and [ * 177 ] conveyed, perhaps as to those lots the *sale would have been without effect. But certainly, as to the assessment and sale, these were conducted as charges upon the original pro prietor, as a lien against him and all claiming the proprietary right under him ; not as a charge against the owner of a lot in the township, separated from the undivided lands.
Upon the whole, we see no advantage that could accrue to the tenant from a new trial, even if any of the evidence rejected was in strictness admissible, as competent or relevant. Supposing it admitted and fully considered, it proves no title in himself, derived either from Hale or from the proprietors’ committee; and a disseisin of the demandant by him being fully proved, there must be

Judgmen :n the verdict.

 Vide Mass. L. vol. ii. 1036.

 Stat. 1783, c. 39, § 5.